UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN BOSCO, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CANOPY GROWTH CORPORATION, MARK ZEKULIN, BRUCE LINTON, MIKE LEE, and TIM SAUNDERS,<br><br>                         Defendants. | Case No: 1:19-cv-11341-LAK<br><br>CLASS ACTION |
| JONATHAN JAY, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CANOPY GROWTH CORPORATION, BRUCE LINTON, MARK ZEKULIN, MIKE LEE, and TIM SAUNDERS,<br><br>                         Defendants. | Case No: 1:20-cv-00485<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF
THE CGC INVESTOR GROUP'S MOTION FOR
CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

ARGUMENT ......................................................................................................... 4

I.    CONSOLIDATION OF THE ACTIONS IS APPROPRIATE ........................... 4

II.   THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ......................... 5

     A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff ............. 5

     B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ............................. 7

          1.   Movant Filed a Timely Motion ................................................................. 7

          2.   Movant Has the Largest Financial Interest in the Relief Sought ............... 7

          3.   Movant Meets Rule 23's Typicality and Adequacy Requirements ........... 8

III.  MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED ................................. 13

CONCLUSION ...................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
   No. 08 MDL 1963 (RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)........................................ 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ......................................................................................... 9

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)................................................................................................ 9

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005)........................................................................................ 2, 8

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ..................................................................................... 6, 7

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009)................................... 11

*Gen. Tel. Co. of the SW v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................................... 10

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108, 113 (E.D.N.Y. Jan. 26, 2012) ....................................................................... 1

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)............................................................................................. 5

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007)........................................................................................... 8

*In re Milestone Sci. Sec. Litig.*,
   183 F.R.D. 404 (D.N.J. 1998) .......................................................................................... 11

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008)................................... 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998).......................................................................................... 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ...................................................................................... 11

*Primavera Familienstifung v. Askin*,
  173 F.R.D. 115 (S.D.N.Y. 1997) ............................................................. 5

*Reimer v. Ambac Fin. Grp., Inc.*,
  No. 08 Civ. 411 (NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..................................... 10

*Richman v Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ............................................................. 10

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ............................................................. 9

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-4617 (RJH), 2006 WL 197036
  (S.D.N.Y. Jan. 24, 2006) ............................................................. 8

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................. 5, 7

**Statutes**

Private Securities Litigation Reform Act,
  15 U.S.C. § 78u-4 ............................................................. *passim*

**Rules**

Fed. R. Civ. P. 42(a) ............................................................. 5

Rule 23 of the Federal Rules of Civil Procedure ............................................................. *passim*

Movants Robert Veillette, Ertha Nanton, Warren and Kathleen Mootrey, Michael Orndoff, and Cathy DiBiase (collectively, the "CGC Investor Group" or "Movant") on behalf of itself and all other similarly situated persons and entities, hereby respectfully submits this Memorandum of Law in Support of Movant's Motion for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel for the putative class pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

Presently pending before the Court are two securities class action lawsuits (the "Actions" or the "Consolidated Action")[1] brought on behalf of a class consisting of all persons, other than Defendants (defined below), who purchased or otherwise acquired Canopy Growth Corporation ("Canopy" or the "Company") securities between September 8, 2017 and November 13, 2019, both dates inclusive (the "Class").[2]  The Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Canopy and certain of its senior officers (the "Defendants").

The PSLRA, as amended, 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant who has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the

---

[1] In addition to the above-captioned Actions, a substantially similar action was filed in the United States District Court for the District of New Jersey on November 20, 2019, captioned *Ortiz v. Canopy Growth Corporation, et al.*, Case No. 2:19-cv-20543 (the "*Ortiz* Action").

[2] Plaintiffs in the Actions propose a class period of September 8, 2017 to November 13, 2019 while the plaintiff in the *Ortiz* Action proposes a class period of June 21, 2019 to November 13, 2019.  Movant adopts the longer Class Period, September 8, 2017 to November 13, 2019, both dates inclusive, because it is the "larger, most inclusive class period."  *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. Jan. 26, 2012).

Federal Rules of Civil Procedure. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted).  Movant has lost $1,664,789.52 as a result of the alleged fraud during the Class Period.[3]  Movant believes that it has the largest financial interest in the outcome of the Actions.  Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical of the claims of the Class, and in that it will fairly and adequately represent the interests of the Class.[4]

Accordingly, the Court should grant Movant's Motion in its entirety.

## FACTUAL BACKGROUND

Canopy, formerly known as Tweed Marijuana Inc., changed its name to Canopy Growth Corporation in September 2015.  ¶ 24.[5]  The Company is headquartered in Smith Falls, Canada and, together with its subsidiaries, engages in the production, distribution, and sale of cannabis in Canada.  *Id.*  Canopy shares began trading on the New York Stock Exchange on May 24, 2018, under the ticker symbol "CGC."  ¶ 25.  Prior to that, Canopy shares traded under the ticker symbol "TWMJF" on the OTC Pink market and under the ticker symbol "WEED" on the Toronto Stock Exchange ("TSX").  *Id.*  The Company's shares continue to trade on the TSX.

---

[3]  The PSLRA certifications of the members of the CGC Investor Group identifying their transactions in Canopy, as well as a chart identifying their losses, and a joint declaration executed by the members of the CGC Investor Group evidencing their intention to pursue the action in a cohesive and collaborative manner, are attached to the Declaration of Lawrence P. Eagel, dated January 21, 2020 ("Eagel Decl."), as Exhibits 1, 2, and 3, respectively.

[4]  The "Class" consists of all persons, other the Defendants, who purchased or otherwise acquired Canopy securities during the Class Period.

[5]  Citations to "¶ __ " are to paragraphs of the Class Action Complaint (the "Complaint") filed in the *Bosco* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint.  The facts set forth in the Complaint are incorporated herein by reference.

Canopy operates through two segments, Cannabis Operations and Canopy Rivers.  ¶ 26. The Company's products include dried flowers, oils and concentrates, softgel capsules, and hemps. *Id*.  Canopy offers its products under the Tweed, Spectrum, DNA Genetics, CraftGrow, Tokyo Smoke, DOJA, Van der Pop, and Maitri brands.  *Id*.  The Company also provides growth capital and a strategic support platform that pursues investment opportunities in the global cannabis sector.  *Id*.

On April 13, 2017, the Canadian Federal Government tabled legislation (Bill C-45), which aimed to legalize regulated recreational cannabis in Canada.  ¶ 27.  On June 19, 2018, Bill C-45 passed the final vote in the Senate, opening the door to recreational retail sales of cannabis throughout Canada upon final approval and regulatory hurdles.  *Id*.  Following the passage of Bill C-45, provinces of Canada announced either that their respective provincial liquor control agencies would oversee distribution and retail of non-medicinal cannabis, or that their respective provincial liquor control agencies would be responsible for distribution and oversee the private retail of non-medicinal cannabis.  ¶ 28.  According to the Canopy's SEC filings, the Canadian recreational market launched on October 17, 2018.  ¶ 29.

Throughout the Class Period, Defendants issued statements that were materially false and/or misleading because they misrepresented and failed to disclose adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that, among other things:  (i) Canopy had exaggerated and/or overestimated the potential market for its products in Canadian retail stores; (ii) as a result, Canopy had failed to properly account for inventory and demand for its products, leading to inventory write-offs and restructuring charges; (iii) all of the foregoing was reasonably likely to have a

3

material negative impact on the Company's financial results; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.  ¶ 53.

On November 14, 2019, Canopy announced its financial results for the second quarter of fiscal year 2020, which ended on September 30, 2019 (the "2Q20 Press Release").  ¶ 54.  Among other results, the 2Q20 Press Release reported revenue that fell below the lowest analyst estimate and an EBITDA loss of C$155.7 million, which one analyst described as "astounding."  *Id*.  The 2Q20 Press Release further advised investors that it was unlikely to meet its previous revenue guidance of C$250 million by the fiscal fourth quarter.  *Id*.  As Canopy's Chief Executive Officer Mark Zekulin explained, "provinces have reduced purchases to lower inventory levels, retail store openings have fallen short of expectations, and Cannabis 2.0 products are yet to come to market."  *Id*.  The 2Q20 Press Release further advised that, "[a]s part of a management-initiated portfolio review, the Company has taken a restructuring charge of $32.7 million for returns, return provisions, and pricing allowances primarily related to its softgel and oil portfolio"; "recorded an inventory charge of $15.9 million to align the portfolio with new strategy"; and that "[t]he Q2 2020 gross margin impact of the portfolio restructuring costs is $40.4 million."  *Id*.

On this news, Canopy's stock price fell $2.66 per share, or 14.38%, to close at $15.84 per share on November 14, 2019.  ¶ 57.

## ARGUMENT

## I.     CONSOLIDATION OF THE ACTIONS IS APPROPRIATE

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the court "shall appoint the most adequate plaintiff for the consolidated actions."  *Id.*

4

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *Weltz*, 199 F.R.D. at 131 ("In securities actions where the complaints are based on the same public statements and reports consolidation is appropriate if there are common questions of law and fact . . . .") (citation and quotations omitted); *Primavera Familienstifung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions here present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *Celotex*, 899 F.2d at 1285.

## II.   THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "as soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

First, the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall publish, in a widely circulated national business publication

or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by any purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." *Id*. The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)    has either filed the complaint or made a motion in response to a notice;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by another class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and has, what is to the best of its knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses against it that Defendants could raise. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Consolidated Action.

### B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all of the requirements of the PSLRA.  Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class, and satisfies the typicality and adequacy requirements of Rule 23.

### 1.   Movant Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the *Ortiz* Action, the first-filed action, published notice of the action on November 20, 2019, within 20 days of the filing of the first-filed complaint, through *Business Wire*, a widely circulated national business-oriented wire service.  *See* Eagel Decl., Ex. 4.  Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §§ 78u-4(a)(3)(A) and (B) expires on January 21, 2019. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.   Movant Has the Largest Financial Interest in the Relief Sought

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial interest in the relief sought by an action.  As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class.  *See* Eagel Decl., Ex. 2.  The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz*, 199 F.R.D. at 132; *Foley*, 272 F.R.D. at 128 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, [the Second Circuit], as have other courts,

shall place the most emphasis on the last of the four factors:  the approximate loss suffered by the movant.").  *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-4617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

Within the Class Period, Movant purchased Canopy securities in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. Movant has suffered substantial losses of $1,664,789.52 under a last-in-first-out ("LIFO") analysis as a result of Defendants' alleged fraudulent statements.  *See eSpeed*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *see also* Eagel Decl., Ex. 2 (Loss Chart). Movant, thus, has a significant financial interest in the outcome of this case.  To the best of Movant's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.  Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a class may be certified only if the following four

requirements are satisfied:   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant.  Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA").  *See also Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a.      Movant's Claims Are Typical of the Claims of the Class

Under Rule 23 (a)(3), the claims or defenses of the representative parties must be typical of those of the class.  A plaintiff satisfies the typicality requirement if the plaintiff has:  (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  "However, the claims of the class representative need not be identical to those of all members of the class."  *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, No. 08 MDL

1963 (RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009); *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted).   A finding of commonality frequently supports a finding of typicality.  *See Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with, the claims of the other Class members.  *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.").  Movant, like the other members of the Class, acquired Canopy securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby.  Thus, Movant's claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses were a result of Defendants' common course of wrongful conduct.  Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3).  *See Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Movant therefore satisfies the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

10

### b.      Movant Is an Adequate Representative

Movant is also an adequate representative for the Class.   Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class."   Adequate representation will be found if the representative has: (a) retained able and experienced counsel and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider:  (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *5 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because his interests are aligned with those of the putative class, and he has retained competent and experienced counsel.").  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class.  15 U.S.C. § 78u-4(a)(3)(B).

Movant meets the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class.  Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial loss it has incurred as a result of the wrongful conduct alleged therein.  *See In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (plaintiff's "financial stake in the litigation provides an adequate incentive for [plaintiff] to vigorously prosecute the action").  Moreover, Movant has retained counsel who, as shown below, are experienced in litigation lawsuits such as these Actions and Movant will

11

submit its choice of counsel to the Court for approval.  Therefore, Movant is an adequate representative for the Class.

Indeed, Movant has already taken steps which demonstrate that it both recognizes and will protect the interests of the Class.  As detailed in Movant's Joint Declaration, Eagel Decl., Ex. 3, the CGC Investor Group is comprised of sophisticated investors with substantial experience investing in capital markets that are committed to managing the Consolidated Action.  *Id*. ¶¶ 2-7. For example, Mr. Veillette is employed as a Financial and Tax Advisor.  *Id.* at ¶ 3.  The members of the CGC Investor Group have a combined ***100 years of investing experience*** and are precisely the type of sophisticated lead plaintiff Congress intended to lead securities class actions when it enacted the PSLRA.

Moreover, before moving for lead plaintiff, the members of the CGC Investor Group held a joint call where they discussed their duties under the PSLRA and commitment to vigorously litigating the Consolidated Action.  *Id.* at ¶¶ 14-16.  In order to effectively manage the litigation, the CGC Investor Group has agreed to hold regular joint calls to discuss any developments in the Consolidated Action.  *Id.* at ¶ 19.  The CGC Investor Group members have committed to provide fair and adequate representation, oversee counsel, and obtain the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy.  *Id.* at ¶ 21. To ensure this litigation is managed effectively, they have agreed to make themselves available for any appearances, depositions, and other necessary meetings to facilitate the prosecution of the Consolidated Action.  *Id.* at ¶ 19.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and therefore satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because Movant sustained the largest amount of

losses from Defendants' alleged wrongdoing, Movant is the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Consolidated Action.

### III.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movant has selected and retained BES as proposed Lead Counsel for the Class.

As set forth in its accompanying firm résumé (Eagel Decl., Ex. 5), BES is a highly accomplished law firm currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of the firm have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### <u>CONCLUSION</u>

For all the foregoing reasons, Movant respectfully requests that the Court:  (1) consolidate the above-captioned actions; (2) appoint the CGC Investor Group as Lead Plaintiff on behalf the Class; (3) approve Movant's selection of BES as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: January 21, 2019                     Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

By: */s/ Lawrence P. Eagel*

13

Lawrence P. Eagel
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (212) 308-5888
Facsimile:  (212) 504-3260
Email: eagel@bespc.com
      fortunato@bespc.com

*Counsel for the CGC Investor Group and Proposed Lead Counsel for the Class*

-and-

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax:  212) 363-7171
Email: ek@zlk.com

*Additional Counsel for the CGC Investor Group*

**<u>CERTIFICATE OF SERVICE</u>**

I, Lawrence P. Eagel, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 21st day of January, 2020.

*/s/ Lawrence P. Eagel*
Lawrence P. Eagel

15